**PROCOM ENERGY, L.L.A., Mike Chandler, John Cummings, Appellant,**

v.

**R. Byron ROACH, Appellee.**

No. 12–98–00138–CV.

Court of Appeals of Texas, Tyler.

Jan. 26, 2000.

Rehearing Overruled May 24, 2000.

---

James S. Robertson, Jr., Tyler, for Appellant.

Robert A. Anderson, Longview, for Appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

### OPINION ON MOTIONS FOR REHEARING

TOM B. RAMEY, Jr., Chief Justice.

Both sides have filed motions for rehearing. The motions for rehearing are granted. The opinion issued by this Court on September 30, 1999, is withdrawn, and the following opinion is substituted.

After a jury verdict favorable to Appellee, R. Byron Roach, Trustee, ("Roach"), the Appellants, Procom Energy, L.L.A., Mike Chandler and John Cummings challenge the trial court's judgment that imposed a constructive trust on Procom's interest in the A.H. Tubbs lease in Gregg County. Procom, Chandler and Cummings (hereinafter sometimes referred to as "Procom") present seven issues and Roach asserts two cross-issues. Procom contends that the court's imposition of a constructive trust arising out of claimed oral promises between the parties was erroneous and in contravention of the Statute of Frauds. We hold, *inter alia*, that because Texas law recognizes that a constructive trust of an interest in land may arise from the breach of an oral promise of a party in a confidential or fiduciary relationship with another or predicated upon the perpetration of fraud against the other

party, we will affirm the trial court's judgment.

### BACKGROUND

Procom was primarily interested in production in the Woodbine zone (approximately 4,000 feet under the surface), while Roach generally explored gas prospects deeper than 4,000 feet. There was evidence that in December 1993, and the early part of 1994, Procom and Roach discussed the joint acquisition of two separate mineral estates, the Loden leases and the Tubbs lease. It is undisputed that Roach and Chandler decided in December 1993 that they would work together to acquire the Loden leases. Roach advanced $24,000 to Chandler to acquire the Loden leases from their owner, Desana Development. The cash consideration Procom actually paid to Desana was $17,000. The evidence was unclear whether any part of the remaining $7,000 was used in the procurement of the Tubbs lease.

The principal dispute here concerns the acquisition of an overriding royalty interest in the Tubbs lease. This interest was owned by Don Bullard ("Bullard"). After the Loden transaction was consummated, discussions about the Tubbs lease took place in January, February and March 1994. The parties' versions of the Tubbs conversations differed. Roach testified that they decided to work together to acquire the Tubbs interest, and that, if successful, he would receive a net 75% revenue interest with the parties splitting the remaining overriding royalty below the base of the Woodbine as had been the agreement on Loden. Chandler, on the other hand, denied unequivocally that he ever promised to work with Roach to acquire the interest in Tubbs. Chandler testified that he consistently informed Roach that he had other commitments regarding the Tubbs lease and could not participate with him in that project.

The Bullard assignment was ultimately negotiated by Lawrence Smith ("Smith"), Procom's landman, and the Bullard interest was conveyed to Smith as Trustee on March 24, 1994. The cash consideration was $5,000. This interest was then assigned by Smith to Procom, but no transfer of an interest was made to Roach. It was learned during the course of the Tubbs negotiations that Bullard had reserved a large overriding royalty interest below the Woodbine of ¼ of ⅞ below the Woodbine.

Roach asserted ownership of the working interest in the Tubbs property below 4,000 feet through an unrelated chain of title. Roach had earlier pooled the Tubbs lease into a 700 acre gas unit, for which he acted as operator. No proceeds from unit production have been paid to Procom for its interests in either the Tubbs or Loden tracts.

Initially, Roach filed this suit seeking judicial construction of an assignment in his chain of title to the working interest. The trial court, in a partial summary judgment, construed the disputed assignment as contended by Roach. No appeal has been taken of this order.

Procom then counterclaimed seeking payment for production attributable to its full ¼ of ⅞ override interest as conveyed in the Tubbs assignment from Bullard. Roach, thereafter, amended his petition to assert his cause of action based upon the claimed oral promise by Chandler to apportion the parties' interests in the Tubbs lease in accordance with their claimed agreement. Roach alleged three grounds for the imposition of a constructive trust upon Procom's overriding royalty interest in the Tubbs lease: (1) the abuse of a confidential or fiduciary relationship, (2) fraud, and (3) resulting trust. Roach makes no claim that Procom breached an oral contract to convey the property. There is no assertion that Procom held the Bullard assignment in an express trust for Roach. After a jury trial on the merits, the trial court entered judgment ordering imposition of a constructive trust on Procom's Tubbs interest based upon the jury's

answers on each of the grounds asserted by Roach.

### PROCOM'S ISSUES ON APPEAL

Procom's first issue is that the trial court erred in imposing a constructive trust on its interest in the Bullard assignment to enforce the claimed promise by Chandler to acquire the Tubbs interest for their mutual benefit. In answer to the first jury question, the jury affirmatively found that Chandler abused "a confidential or fiduciary relationship with Roach by representing or promising to work with Roach in acquiring the Tubbs lease for their joint benefit and then failing to perform on his promise or representation." In answer to the fourth question, the jury found that if the parties acquired the Tubbs interest, Roach would receive such overriding royalty below 4,000 feet that would provide him with a net 75% revenue interest and the parties would equally divide the remaining overriding royalty. Thus, as stated, the jury found the principal factual issues in Roach's favor: that Roach and Chandler did promise to work together to acquire the Tubbs interest, that a confidential or fiduciary relationship existed between Roach and Chandler in the acquisition of the Tubbs property and that this relationship was abused by Procom's refusal to convey the promised interest to Roach. It is Procom's contention that the imposition of a constructive trust in this transaction based upon an alleged oral promise is in derogation of the Statute of Frauds, which prohibits enforcement of a parol promise pertaining to the ownership of land. TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987).[1] A working interest and an overriding royalty interest in an oil and gas lease come within the ambit of the Statute of Frauds. *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966).

A constructive trust is a legal fiction, a creation of equity to prevent a wrongdoer from profiting from his wrongful acts. *Ginther v. Taub,* 675 S.W.2d 724, 728 (Tex.1984). Such trusts are remedial in character and have the broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex.1974). There is long-standing precedent that recognizes that the Statute of Frauds is not a bar to the creation of a constructive trust arising from an abuse of a confidential or fiduciary relationship in the context of a parol transaction. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 560 (1962); *Smith v. Bolin,* 153 Tex. 486, 271 S.W.2d 93, 96–97 (1954); *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951); *Grace v. Zimmerman,* 853 S.W.2d 92, 97 (Tex.App.— Houston [14th Dist.] 1993, no writ). A constructive trust arising out of such abuse of a prior confidential relationship which results in unfair conduct or unjust enrichment escapes the Statute of Frauds. *Ginther,* 675 S.W.2d at 728.

Procom contends that the relationship between the parties here does not give rise to a constructive trust. As stated, however, the jury found the parties' relationship to have been "fiduciary" or "confidential." Procom contends that a constructive trust arising from the abuse of a confidential or fiduciary relationship requires the existence of a partnership or a joint venture between the parties. Neither party here asserts that they were engaged in a partnership or joint venture. The Texas Supreme Court, however, has not required that the contracting parties be engaged in a partnership or a joint venture as a predicate to the imposition of a constructive trust. *Gaines,* 358 S.W.2d at 560–61. The supreme court approved language in the *Fitz–Gerald* case that an abuse of confidence that renders unconscionable the retention of property by a party suffices generally to invoke equitable relief that gives rise to a constructive trust; it may be "an abuse of either a

---

1. *See also* TEX. PROP.CODE ANN. §§ 112.004 and 5.021 (Vernon 1984).

technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or merely personal one." *Fitz–Gerald*, 237 S.W.2d at 261. The rule applies to all persons regardless of whether the relationship may be characterized as fiduciary where the purchaser has a duty to perform inconsistent with his character as purchaser. *Ibid*, at 262.

▮ Additionally, Chandler specifically pled that he had "a fiduciary or confidential relationship" with Roach in the parties' prior acquisition, the Loden leases. The discussions regarding the Tubbs lease began after the Loden transaction was completed. The proposed division of the interests between the parties was substantially identical in the two acquisitions. There was no evidence of a change of the relationship between the two transactions. In all essential respects, the transactions were the same. Admissions contained in unretracted pleadings are judicial admissions which are legally binding on the party making them. *Blankenship v. County of Galveston*, 775 S.W.2d 439, 440–41 (Tex. App.—Houston [1st Dist.] 1989, no writ).

Furthermore, the supreme court has held that the imposition of a constructive trust must not be limited by a narrow definition of a "confidential or fiduciary relationship." *Smith*, 271 S.W.2d at 97; *Weaver v. Stewart*, 825 S.W.2d 183, 185–86 (Tex.App.—Houston [14th Dist.] 1992, writ denied). It has been repeatedly held that a jury properly must decide whether a relationship between parties is a confidential relationship. *Carr v. Weiss*, 984 S.W.2d 753, 765 (Tex.App.—Amarillo 1999, writ denied); *Smith*, 271 S.W.2d at 97; *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d at 334, 337 (1944). As stated, the jury here found that a confidential or fiduciary relationship existed between Procom and Roach in the Tubbs lease transaction.

[8] Additionally, where an issue is raised as to the fairness of a confidant or fiduciary in this type of transaction, the burden of proof is imposed upon that individual who refuses to convey the withheld interest to fully disclose the facts and circumstances that would demonstrate his good faith in his conduct. *Fitz–Gerald*, 237 S.W.2d at 261. The presumptive unfairness of Procom in not conveying the promised interest to Roach is not explained by Procom; its burden has not been satisfied in that respect. *Texas Bank & Trust Co.*, 595 S.W.2d at 507.

Procom also argues that to escape the general rule that land titles must not rest in parol, there must be strict proof of a prior and separate confidential or fiduciary relationship. *Ginther*, 675 S.W.2d at 728; *Consolidated Gas & Equipment Co.*, 405 S.W.2d at 336. As stated, Chandler has admitted in his live pleadings the existence of a fiduciary or confidential relationship with Roach in the Loden lease transaction. The Loden transaction was prior to and separate from the conversations concerning the Tubbs lease. Although the prior relationship had not endured over an extended period of time, we are unable to agree that there was no prior and separate relationship between the parties preceding the Tubbs transaction.

▮ Procom assiduously contends that the trial court erred in imposing the constructive trust to the Tubbs transaction because the essential terms of the agreement are in dispute and have been proven solely by parol evidence. The controversy in this case centered upon whether the parties had agreed to work together to acquire the Tubbs lease. If the jury had agreed with Procom, Procom would have retained the interest conveyed to them in the Tubbs' acquisition. The jury, however, found that Roach's version of the transaction was correct; a constructive trust was imposed and the parties' interests were divided as stated in the trial court judgment here. As the Supreme Court stated in *Gaines v. Hamman*, "[i]t is further no objection to the theory of constructive trust that the parties may have contem-

plated a division of property in the form of overrides or something similar thereto rather than a division of profits in the form of money." *Gaines*, 358 S.W.2d at 560. Here, the evidence showed that if the parties had agreed to work together to acquire Tubbs, they had agreed that Roach and Procom would be assigned equal overrides after Roach received his alleged requirement of a 75% net working interest. This division was the same as the parties had agreed earlier in the prior acquisition of the Loden leases. There was no alternative scheme for the division of the acquired property presented. As stated, the jury agreed with Roach's contention as to the existence of the elements of a constructive trust as to the Tubbs' overriding royalty; the division of the overrides followed as in *Gaines. Ibid.* For the reasons stated, we conclude that the trial court did not err in imposing a constructive trust on Procom's overriding royalty predicated upon the jury's finding that Chandler had abused a confidential relationship with Roach.

█ Secondly, the trial court judgment imposed a constructive trust upon Procom's Tubbs interest predicated on the jury finding of Chandler's fraud in his dealings with Roach in this transaction. The claimed fraudulent conduct arose out of the same Tubbs lease acquisition discussions between the parties, and Procom's failure thereafter to deliver the agreed interest to Roach. Again, Procom's alleged failure to comply with Chandler's promise to convey Roach's interest in the Tubbs assignment, as found by the jury, constituted the misrepresentation underlying the jury's finding of fraud. There was evidence that Roach relied upon Chandler's representations and did not undertake independently to procure the assignment from Bullard. There was also evidence that he divulged various title and geological information to Chandler in reliance upon Chandler's promise to work together on the Tubbs acquisition found by the jury.

█ It is noted that the parties do not disagree that fraud is a recognized basis for the imposition of a constructive trust. *Ginther*, 675 S.W.2d at 727–28; *Blankenship v. Citizens National Bank of Lubbock*, 449 S.W.2d 77, 79 (Tex.Civ.App.— Amarillo 1969, writ ref'd n.r.e.). We conclude that fraud likewise is a ground for the imposition of a constructive trust in spite of the Statute of Frauds. Procom's first issue is therefore overruled. In view of our holdings as to the imposition of a constructive trust based upon an abuse of a fiduciary or confidential relationship and upon the fraud findings, it will not be necessary for us to address Roach's third theory, a resulting trust.

In its second issue, Procom asserts that there is no evidence, or alternatively, insufficient evidence, to support the jury's findings discussed in the first issue. In reviewing no evidence or legal insufficiency points, we are required to consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). In reviewing a factual insufficiency challenge, we must consider all the evidence and set aside a finding only if the evidence is so weak or the evidence to the contrary so overwhelming that the finding must be set aside. *Id.* If, after applying that test, we find the evidence factually insufficient, we must detail the relevant evidence and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust, why it shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

█ As stated, the underlying evidentiary dispute was whether there was an oral promise by the parties to work together toward the acquisition of the Tubbs lease. The parties did not agree in their version of the discussions pertaining to the mutual promises to jointly acquire the Bul-

lard interest. Deb Ziegler, Roach's office employee, testified to having received three telephone calls from Chandler to discuss the Tubbs negotiations. One recorded message on March 14 stated: "Deal is coming together. Price seems to be good." She said that the terms of the negotiations were discussed in the various calls. Ziegler testified that Chandler's secretary delivered a form for the proposed lease assignment to the Roach office on March 15, which she, in turn, faxed to Roach in Colorado. Roach's wife, Anda, who also worked in Roach's office, likewise testified to numerous conversations with Chandler about the progress of the Tubbs trade. She stated that Chandler told her that the terms of the Tubbs assignment were the same as the Loden leases. Anda faxed the proposed wording for the Tubbs assignment to Roach, who responded with the terminology he desired to be included in the Tubbs lease. We conclude that there is sufficient evidence that Procom often conferred with Roach and his associates about the progress of the negotiations in acquiring the Tubbs lease, which supports the jury's finding that the parties promised to work jointly upon the project. Procom has sought to explain the discussions about the Tubbs negotiations by asserting that after they acquired the Tubbs interest, they had hoped to farm it out to Roach. Since the subject interest is an overriding royalty, however, a farmout of the interest to Roach would not have been appropriate.

As stated, there was legally and factually sufficient evidence of a confidential or fiduciary relationship between the parties as to the Tubbs acquisition; Procom's judicial admission in pleading the existence of such relationship on the Loden prospect and the testimony that Roach shared title and geological information with Procom supports the jury's finding of a confidential or fiduciary relationship between the parties.

Next, we consider whether the evidence is legally or factually sufficient to support the jury finding of fraud. Here, Procom's sole contention is that the finding of fraud is not supported by the evidence because the Tubbs promises between the parties as urged by Roach were not enforceable because they were in derogation of the Statute of Frauds. Procom asserts that the claimed oral agreement to work together on Tubbs is also the basis for the fraud theory of recovery and that if the oral promise cannot stand in contravention of the Statute of Frauds, then the fraud cause of action must also fail. Furthermore, Procom urges that there is no evidence, or the evidence is legally insufficient to support the verdict because the court was barred from giving weight to the only evidence offered to prove the vital fact, the oral promises. Procom contends that it was therefore error to submit the fraud question to the jury, as was the trial court's denial of both its motion for instructed verdict and its motion for judgment notwithstanding the verdict.

We have heretofore held that a constructive trust imposed upon Procom's Tubbs interests predicated upon both the abuse of a confidential or fiduciary relationship and fraud circumvents the Statute of Frauds and validates the alleged oral agreement under the circumstances presented here. Procom does not attack the evidence supporting the other specific elements of a fraud cause of action. Procom's second issue is overruled.

By their third issue, Procom asserts that there is no evidence, or alternatively, insufficient evidence to support the jury's finding of a resulting trust. As stated, that issue need not be addressed.

Likewise, in their fourth issue, Procom complains that the trial court erred in failing to confirm its record title to the full overriding royalty interest conveyed in the Bullard assignment and ordering payment of $83,000 damages to Procom. Contrarily, their fifth issue asserts that there is no evidence or insufficient evidence to support the jury's award of $24,000 damages due Procom. There is evidence to support

both recoveries. The calculation of $83,-000 damages, however, is predicated upon Procom prevailing on the Statute of Frauds defense. It is undisputed that Procom's recovery of $24,000 is calculated by reducing its $83,000 recovery by the interest the jury found should have been assigned by Procom to Roach. As explained, we have held that the trial court did not err in imposing the constructive trust upon Procom's ownership thereby authorizing the reduction in Procom's recovery on Tubbs to $24,000. We must therefore overrule Procom's fourth and fifth issues.

Procom's sixth issue complains that the trial court erred in assessing exemplary damages against Chandler because Roach sustained no actual damages from the transaction. The jury awarded Roach $24,000 in exemplary damages, which the jury found to be predicated upon the finding that Chandler had committed fraud against him.

Procom contends that the recovery of actual damages is a prerequisite to an award of exemplary damages. *See Nabours v. Longview Savings and Loan Assn.*, 700 S.W.2d 901, 903 (Tex.1985); *Doubleday & Company, Inc. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex.1984). It is required that the party seeking punitive damages must allege, prove, and secure jury findings on the right to recover and the amount of his actual damages. *Nabours*, 700 S.W.2d at 903; *Martin v. Texas Dental Plans, Inc.* 948 S.W.2d 799, 805 (Tex.App.—San Antonio 1977, writ denied). The jury did not find that Roach sustained actual damages in this transaction.

Roach, however, contends that Texas courts will not deny such punitive damages when an action sounds in equity as here. *Nabours*, 700 S.W.2d at 905. Note 3 of the *Nabours* opinion authorizes punitive damages where these damages are incident to equitable relief when it involves the return of property. *Nabours*,

700 S.W.2d at 904. Here, Roach's equitable relief does not pertain to the return of property. The "return of property" exception, however, is not as narrow as *Nabours* seems to imply. In *International Bankers Life v. Holloway*, 368 S.W.2d 567, 584 (Tex.1963), the court sanctioned the recovery of punitive damages in an equitable action in which the plaintiff sought to recover usurped corporate profits. The court held that, "[i]t is consistent with equitable principles for equity to exact ... an additional exaction for unconscionable conduct. There should be a deterrent to conduct which equity condemns and for which it will grant relief." *Id.* Thus, under the *Holloway* opinion, we conclude that punitive damages may be recoverable where equitable relief is granted and the promised interest has not been conveyed, despite the absence of jury findings of actual damages. Procom's sixth issue is overruled.

Procom's seventh issue is conditional. If our holding here had been to decline to enforce Procom's alleged oral promises, we should reduce Roach's $31,000 attorneys' fee award in the trial court judgment. As we have upheld the trial court's enforcement of Chandler's oral promise to convey an overriding royalty to Roach, this seventh issue must be overruled.

### ROACH'S CROSS-ISSUES

In Cross–Appellant's first issue, Roach asserts that the trial court erred in awarding Procom $15,500 in attorney's fees. The trial court reduced by one-half the jury's finding of Appellants' attorneys fees in the amount of $31,000 in accordance with the parties' agreement that attorney's fees should be so reduced to eliminate fees attributable to Procom's working interest claim upon which Roach had prevailed previously. Roach ardently argues that since there is no producing well on the Tubbs tract, Procom is not entitled to participate in the unit absent a contractual agreement with the party paying the production proceeds attributable to

Procom's overriding royalty interest. *Superior Oil Company v. Roberts*, 398 S.W.2d 276, 278 (Tex.1966).

In *Superior Oil*, the plaintiffs were one-half interest owners of individual lots who declined to execute a mineral lease on their property and thus had no contractual relationship with the lessee; their co-tenants had executed oil and gas leases to the oil company. The Supreme Court held that since there was no contractual relationship between the plaintiffs and the lessee and there were no wells drilled on or near their property, they were not tenants in common and were not entitled to recover proceeds from unit production. Here, the heart of the suit is Roach's admitted relationship and agreement with Procom and the parties' promises, though not found to be contractual, to jointly acquire the Tubbs overriding royalty interest and, Roach contends, to assign the ownership of those interests in accordance with their mutual promises. Roach testified that he was the payor of production from the subject gas unit. He has paid Procom nothing from production from this gas unit. Unlike *Superior Oil*, the jury specifically found that Roach owed Procom $24,000 for production proceeds from the ownership of its overriding royalty interest in Tubbs. This jury finding has not been challenged by Roach on appeal. We conclude that the evidence and findings of the jury distinguish the holding in *Superior Oil* from the instant case.

■ Further, Roach contends that no monies nor attorneys' fees are owed Procom because Procom has asserted a claim to the Tubbs lease working interest. As stated, Roach owns his working interest through an unrelated chain of title. Procom earlier claimed the working interest in Tubbs but that assertion was concluded by an adverse summary judgment prior to the jury trial; no appeal has been perfected by Procom on this ruling and it is not before us. Roach additionally complains that Procom has sought to recover the entire override it received in the Bullard assign-ment and that under Tex. Nat. Res.Code Ann. § 91.402(b) a payor may withhold payments where there is a dispute as to the payee's interest. The trial court judgment provided that Procom recover only a 6.25% overriding royalty interest and the proceeds from it. As stated, Roach has not contested that Procom is owed that specific interest in Tubbs; in fact, at trial Roach conceded that he owes the $24,000 in proceeds from production to Procom. Procom's 6.25% override does not affect Roach's 75% net working interest. Procom, as recognized owners of a 6.25% overriding royalty interest, has been entitled to recover that undisputed interest and the proceeds from that interest. It was appropriate for Procom to seek to recover his undisputed claim for the proceeds. We overrule Roach's first cross-issue.

■ Roach's second cross-issue pertains to Procom's recovery of production proceeds from the Loden leases. He asserts that the evidence was legally and factually insufficient to support the jury finding that Chandler made valuable improvements to the Loden leases. The jury awarded $26,000 to Procom for unpaid proceeds from its overriding royalty interest in the Loden leases. An exception to the Statute of Frauds, for the purpose of preventing actual fraud, is the making of valuable and permanent improvements to the property by the party seeking to avoid the invocation of the Statute. *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1117 (1921). The parties agree that there is a dearth of authority as to requisite proof of such improvements in this context.

Roach testified that before he and Chandler agreed that they would seek to quiet title to the Loden leases, there were various claimants to the Woodbine production on the Loden leases that held the Loden leases. Roach asserted that it appeared that the various claims "were destined for a lawsuit". Chandler agreed to acquire the Loden leases which he did. Chandler shut-in the Woodbine wells and took the appropriate steps to eliminate the various

claims under the old leases. Roach then re-leased the Loden tract for the deeper Cotton Valley production. Three wells were drilled, the leases were pooled into the Roach's Stinchcomb Cotton Valley gas unit and at the time of trial, Roach had received 2.2 million dollars in proceeds from production. The Loden leases were significantly more valuable than the Woodbine leases that had held the prior leases. Chandler testified that he continued to be liable for more than $15,000 in plugging costs in eliminating the prior Woodbine leases. We conclude that Chandler's services in clearing the leasehold interests in the Loden tracts constituted valuable and permanent improvements to the Loden and were sufficient legal and factual evidence to support the jury's damage award to Procom for unpaid proceeds for its undisputed overriding royalty interest in the Loden leases. Roach's second cross-issue is overruled.

The judgment of the trial court is affirmed.