**J. Mark SWINNEA, Appellant**

**v.**

**ERI CONSULTING ENGINEERS, INC. and Larry Snodgrass, Appellees**

**NO. 12–14–00288–CV**

Court of Appeals of Texas, Tyler.

Opinion delivered February 10, 2016.

Rehearing Overruled March 4, 2016

Gregory D. Smith, for Appellant.

Deborah J. Race, for Appellee.

Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

## OPINION

JAMES T. WORTHEN, Chief Justice

J. Mark Swinnea breached his fiduciary duty to ERI Consulting Engineers, Inc. and Larry Snodgrass. In this appeal of the trial court's post-remand judgment, he complains of the disgorgement, exemplary damage, and attorney's fees awards rendered against him. We affirm.

### BACKGROUND

Snodgrass and Swinnea were equal owners of ERI, managing asbestos abatement projects for contractors, and partners in a limited partnership called Malmeba Company, Ltd. In the summer of 2001, without Snodgrass's knowledge, Swinnea and another ERI employee formed a new company, Air Quality Associates, Inc. In August 2001, Snodgrass and ERI purchased Swinnea's interest in ERI, although Swinnea was to remain an ERI employee for six years, during which time he was not to compete with ERI. The following year, Swinnea's wife started a new abatement contracting company, Brady Environmental, Inc. In 2004, Snodgrass and ERI sued Swinnea for statutory fraud in a real estate and stock transaction, common law fraud, breach of the noncompete clause in the contract, and breach of fiduciary duty. After a bench trial, the trial court determined that Snodgrass and ERI are entitled to recover combined forfeiture and actual damage awards of $1,020,700.00, an exemplary damage award of $1,000,000.00, and attorney's fees.

Swinnea appealed that judgment to this court. In our August 30, 2007 judgment, we deleted the monetary awards to ERI and Snodgrass, and rendered judgment that ERI and Snodgrass take nothing, but affirmed that Swinnea, Malmeba Company, Ltd., and Brady Environmental, Inc. take nothing on their claims against ERI and Snodgrass.[1] Upon review of our opinion and judgment, the supreme court affirmed our determination that ERI and Snodgrass should take nothing on their conspiracy claims, but reversed our judgment as to the monetary awards for the remaining claims, and remanded the case to us for further review.[2]

On remand to this court, we suggested a remittitur of a portion of the award for lost profits, determined that the statutory cap on exemplary damages does not apply in this case, and affirmed the trial court's award of exemplary damages.[3] Finally, as directed by the supreme court, we remanded the case to the trial court for review of the forfeiture award in light of the principles discussed in the supreme court's opinion. Upon remand, in reviewing the forfeiture award, the trial court considered the evidence in the original record and allowed the parties to present additional evidence. The trial court determined that ERI and Snodgrass are entitled to recover from Swinnea actual damages in the amount of $178,601.05, disgorgement in the amount of $720,700.00, exemplary damages in the amount of $1,000,000.00, attorney's fees, pre- and post-judgment interest, and court costs. It further held that ERI and Snodgrass shall take nothing against Bra-

1. *Swinnea v. ERI Consulting Eng'rs, Inc.*, 236 S.W.3d 825 (Tex.App.–Tyler 2007), *rev'd*, 318 S.W.3d 867 (Tex.2010).

2. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867 (Tex.2010).

3. *Swinnea v. ERI Consulting Eng'rs, Inc.*, 364 S.W.3d 421 (Tex.App.–Tyler 2012, pet. denied).

dy. Environmental, Inc., and that Swinnea, Brady Environmental, Inc., and Malmeba Company, Ltd. shall take nothing against ERI and Snodgrass. It is from this July 15, 2014 judgment that Swinnea now appeals.

## LIMITED APPEAL

In his first issue, Swinnea asserts that Snodgrass should take nothing because he lacks standing and therefore proved no individually recoverable actual damages. In his fourth issue, he argues, in part, that we should vacate our pronouncement that the statutory cap on punitive damages does not apply and render judgment that the statutory "cap-busting" exception does not apply in this case.

▮ The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986). The doctrine is intended to achieve uniformity of decision as well as judicial economy. *Id.* It is based on public policy and is aimed at putting an end to litigation. *Id.*

▮ Swinnea raised the issue of Snodgrass's standing in the first appeal of this case. We ruled against him on the issue. *See Swinnea*, 236 S.W.3d at 833. Accordingly, that determination is law of the case. *See Hudson*, 711 S.W.2d at 630. Likewise, we will not revisit Swinnea's issue regarding the statutory cap. *See Swinnea*, 364 S.W.3d at 424. We overrule Swinnea's first issue and that part of issue four requesting us to reconsider application of the statutory cap.

## DISGORGEMENT

In his second issue, Swinnea asserts that this court should eliminate or revise the disgorgement award. He asserts that the consideration he gave up, his ERI stock, was worth as much as what he received in return and has been ordered to disgorge. Further, he argues, a "proper restitutionary award" would require ERI and Snodgrass to restore the consideration they received. Consequently, the argument continues, the disgorgement award goes beyond restoring a windfall and is thus punitive. Swinnea further argues that because no actual damages were recovered in connection with the buyout transaction, there is no legal basis for a punitive disgorgement. Additionally, he asserts that the disgorgement award cannot overlap or duplicate another punitive damage award. Therefore, he argues, either the $720,700.00 disgorgement award or the one million dollar punitive damages award must be deleted. Finally, he claims the punitive disgorgement award must be screened for excessiveness.

In his fourth issue, Swinnea argues, in part, that he should not be required to return $66,500.00 because it was not obtained by wrongdoing. He asserts that this money represents rentals earned on the fifty percent interest Swinnea acquired in the leased office space years before the buyout and therefore is not disgorgeable.

### Applicable Law

▮ Disgorgement is an equitable forfeiture of benefits wrongfully obtained. *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex.2015) (orig. proceeding). Among other situations, it is applicable where a person who renders service to another in a relationship of trust breaches that trust. *Id.* Disgorgement is compensatory, but it is not damages. *Id.* The central purpose of forfeiture is to protect relationships of trust by discouraging agents' disloyalty. *Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex.1999). Where a fiduciary takes advantage of his position of trust to induce a principal to enter into a

contract, the fiduciary is not entitled to compensation. *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 873–74. Thus, when a fiduciary fraudulently induced a contract, this breach of fiduciary duty may give rise to equitable forfeiture of contractual consideration. *Id.* at 882. Forfeiture may be appropriate even if the party who was fraudulently induced into the contract fails to suffer harm or when he can be fully compensated by damages. *Id.* at 874.

■ Equitable forfeiture is distinguishable from an award of actual damages incurred as a result of a breach of fiduciary duty. *Burrow*, 997 S.W.2d at 240. Further, a claimant need not prove actual damages to succeed on a claim for forfeiture because they address different wrongs. *Id.* In addition to serving as a deterrence, forfeiture can serve as restitution to a principal who did not receive the benefit of the bargain due to his agent's breach of fiduciary duties. *Id.* at 23738. Additionally, punitive damages may be recovered as an exaction for unconscionable conduct where equitable relief has been granted. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex.1963); *Procom Energy, L.L.A. v. Roach*, 16 S.W.3d 377, 385 (Tex.App.–Tyler 2000, pet. denied) (op. on reh'g).

■ Whether a forfeiture should be imposed must be determined by the trial court based on the equity of the circumstances. *See Burrow*, 997 S.W.2d at 245. The trial court must determine whether the fiduciary's conduct was a clear and serious breach of duty to the principal, whether any fees should be forfeited, and if so, what the amount should be. *Id.* at 245–46. The trial court should consider factors such as the gravity and timing of the breach, the level of intent or fault, whether the principal received any benefit from the fiduciary despite the breach, the centrality of the breach to the scope of the fiduciary relationship, any other threatened or actual harm to the principal, the adequacy of other remedies, and whether forfeiture fits the circumstances and will work to serve the ultimate goal of protecting relationships of trust. *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 875. Ultimately, the trial court has discretion as to the amount or extent of a forfeiture award based on the circumstances. *Burrow*, 997 S.W.2d at 241–43, 245.

### Analysis

■ Central to Swinnea's argument on appeal is his contention that the disgorgement award is punitive. The supreme court has recognized that forfeiture of contractual consideration may have a punitive effect, but that is not the focus of the remedy. *See id.* at 240. The purpose of disgorgement is to protect relationships of trust by discouraging agents' disloyalty. *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 873. Furthermore, unlike an award of exemplary damages, actual damages are not a prerequisite for disgorgement of contractual consideration. *Id.* Thus, disgorgement is not a punitive award. Moreover, contrary to Swinnea's assertion, an award of equitable disgorgement coupled with an award of exemplary damages is not duplicative. The supreme court long ago determined that where equity requires the return of property, the recovery of exemplary damages is also allowed. *Holloway*, 368 S.W.2d at 584. Trial courts are authorized to further protect relationships of trust by assessing a punitive award in addition to disgorgement if warranted by the circumstances. *ERI Consulting Eng'rs Inc.*, 318 S.W.3d at 875. Because the disgorgement award is not punitive, we need not evaluate the award for excessiveness pursuant to rules applicable to punitive damage awards.

Swinnea asserts that restitution should be mutual and complains there has been no reciprocal restitution to him. We disagree that mutual restitution is applicable here. In a case where the transaction is to be unwound, rescission, a form of restitution, applies. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012). Rescission requires a mutual restoration in which each party restores property received from the other, restoring the parties to the status quo ante. *Id.* at 825–26. Here, ERI did not ask to rescind the contract. The remedy of disgorgement was in response to Swinnea's breach of his fiduciary duty. It was not part of a rescission requiring mutual restoration, and the trial court was not attempting to restore the status quo.

The disgorgement award is not punitive and mutual restoration is not applicable here. We overrule Swinnea's second issue.

Swinnea complains that the judgment confiscates one hundred percent of the rentals ERI paid Swinnea to lease office space after the buyout. He argues that half of this sum is rentals earned on the fifty percent interest Swinnea acquired in the leased premises years before the events at issue. He asserts that the latter amount, $66,500.00, is not disgorgeable under any circumstance because that amount was not obtained through wrongdoing.

Swinnea and Snodgrass each testified that, prior to the execution of the buyout agreement that is the subject of this lawsuit, they were equal partners in Malmeba Company, Ltd. Swinnea explained that "Malmeba is the leasing company that was originally set up, from an accounting standpoint, to handle the business and—or the building and equipment and that type of thing." They both testified that Malmeba owned the building where ERI conducted its business. They both stated that, at the time of the buyout, the building was owned free and clear of any debt. Our review of the record revealed no evidence that, prior to the date of the buyout, ERI paid rent to Malmeba for use of the building.

Furthermore, the record includes a copy of a special warranty deed, dated August 31, 2001, executed in connection with the buyout. Pursuant to that deed, four individuals, Mark Swinnea, Dawn Swinnea, Larry Snodgrass, and Shirley Snodgrass, conveyed the building to Malmeba Company, Ltd. Also as part of the August 31, 2001 buyout, Snodgrass transferred his ownership interest in Malmeba to Swinnea. ERI then entered a lease agreement with Malmeba for a period of six years. Finding of fact 101 from the original trial and finding of fact 9 from the recent remand both state that Swinnea should disgorge himself and return to ERI and Snodgrass the sum of $133,200.00, constituting lease payments of $3,600.00 per month paid from September 1, 2001, through September 30, 2004.

Swinnea erroneously focuses on the fact that, prior to the buyout agreement, he owned fifty percent of Malmeba, which he obtained lawfully. The focus should be on the lease payments, which were obtained through wrongdoing. The supreme court specifically determined that, "as contractual consideration, the lease payments from ERI to Malmeba are subject to forfeiture for Swinnea's breach of fiduciary duty." *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 876. As a result of his fraudulent inducement and breach of fiduciary duty, Swinnea obtained the lease agreement with ERI and received one hundred percent of the rentals from September 1, 2001, through September 30, 2004. Prebreach ownership is irrelevant and no prebreach rentals, if there were any, were ordered disgorged. The trial court's order

requiring Swinnea to disgorge himself of $133,200.00 for lease of the building after the buyout is an appropriate equitable remedy. *See id.* at 873, 876. We overrule Swinnea's fourth issue to the extent it complains of disgorgement of the lease payments.

Although opaque, it is possible that Swinnea is also attempting to argue that the trial court abused its discretion by ordering an excessive disgorgement award. The supreme court determined that contractual consideration received by Swinnea is recoverable in equity and instructed the trial court to consider certain factors in fashioning an equitable remedy. *Id.* at 873–74.

■ On remand, the trial court found that Swinnea violated his fiduciary duty; his wrongful conduct was intentional, malicious, and served his own self-interest; his conduct was a continuing, calculated course of conduct designed to cause injury to Snodgrass and ERI when they were most vulnerable; the key to ERI's value was its ability to retain Swinnea, a major source of revenue, expertise, and long-standing client relationships; Swinnea's breach was directed at the core elements of ERI, which gave the buyout transaction value; Swinnea wrongfully induced Snodgrass and ERI to pay full value for the buyout; and Swinnea's objective was the financial destruction of ERI and Snodgrass. The court further found that recovery of lost profits alone as actual damages is inadequate, Swinnea's culpability was significant, and his conduct highly offensive to a public sense of justice and propriety. The court also found that the award of punitive damages, without forfeiture, is inadequate to remediate. Finally, the court found that disgorgement was fair, equitable, and just. Based on these findings, the trial court ordered disgorgement of $720,700.00. Included in this amount is

$437,500.00, a portion of the upfront cash payment; $150,000.00, half the value of Malmeba; and $133,200.00 for lease payments.

Ordinarily, forfeiture extends to all fees for the matter for which the fiduciary was retained. *Burrow*, 997 S.W.2d at 241. Here, Swinnea used his position as a fiduciary to induce ERI and Snodgrass to enter into a contract involving a significant financial commitment, and then continued to pursue a course of conduct that was destructive to ERI and Snodgrass. We conclude that the trial court's determination of the amount of the disgorgement award was not an abuse of discretion. To the extent Swinnea argues otherwise in any of his issues, we overrule said contention.

### EXCESSIVENESS OF PUNITIVE AWARD

In issue four, Swinnea argues, in part, that the punitive damage award and the "punitive" disgorgement award are excessive under Texas law and in violation of federal due process protections, both individually and when combined. He asserts that the awards exceed the four to one ratio approved by the supreme court. Additionally, he argues that the harm is purely economic, $178,601.05, and is offset by the profit obtained through the AQA relationship. He asserts that the facts of this case do not support punitives ten times actual damages.

### Applicable Law

■ Exemplary damages must be reasonably proportioned to actual damages whether they are sought in relation to monetary damages or equitable relief. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *Martin v. Tex. Dental Plans, Inc.*, 948 S.W.2d 799, 805 (Tex. App.–San Antonio 1997, writ denied). Determination of the ratio between the amount of actual and exemplary damages

depends on the facts of the case. *Kraus*, 616 S.W.2d at 910. Factors to consider in determining whether an award of exemplary damages is reasonable include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.*

■■■ An exemplary damages award that is grossly excessive offends due process because it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003). The United States Supreme Court has established three guideposts for determining whether an exemplary damage award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between actual and exemplary damages, and (3) a comparison of the exemplary damages awarded and other civil or criminal penalties that could be imposed for similar misconduct. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 308 (Tex.2006). The question of excessiveness of exemplary damages depends on the facts of the particular case and is largely within the discretion of the factfinder. *Russell v. Truitt*, 554 S.W.2d 948, 955 (Tex.Civ.App.–Fort Worth 1977, writ ref'd n.r.e.).

### Analysis

■■■ Swinnea's arguments regarding excessiveness of the punitive award are based on the assumption that the amounts ordered disgorged are also punitive. Therefore, for purposes of determining whether the exemplary damages are excessive in relation to actual damages, he argues that the amount disgorged must be added to the one million dollar punitive award. As explained above, the disgorgement award is not a punitive award. It is therefore inappropriate to review it for excessiveness in the manner applicable to exemplary damages. Our review under this issue is limited to the one million dollar exemplary damage award. For purposes of this review, we categorize the disgorged amounts together with actual damages to determine the total amount of compensatory awards. *See Martin*, 948 S.W.2d at 805. Accordingly, we add lost profit damages of $178,601.05 to the disgorgement award of $720,700.00 for a total of $899,301.05 in compensatory awards for comparison with the one million dollar exemplary award.

In support of his argument that the punitive award is excessive, Swinnea asserts that the $178,601.05 should be offset by profit ERI obtained through the AQA relationship. The supreme court considered this argument and determined that profits from ERI's work with AQA, if there were any, need not be offset against the lost profits from Merico caused by Swinnea's position with AQA. *ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 878. Moreover, that court determined that Swinnea did not meet his burden to provide evidence that ERI's lost profit damages calculation was actually inadequate because of a necessary credit. *Id.* at 879.

To determine if the award of exemplary damages is reasonable, we turn to a consideration of the *Kraus* factors. *See Kraus*, 616 S.W.2d at 910. The trial court found that Swinnea violated his fiduciary duty to ERI and Snodgrass and committed fraud in his fiduciary capacity; his wrongful conduct was committed intentionally with the premeditated purpose of violating the trust he owed to ERI and Snodgrass; he violated this trust in order to serve his own self-interest; his wrongful conduct

was not an isolated violation but consisted of a continuing, persistent, calculated course of conduct that began before the buyout and continued until his employment was terminated; his wrongful conduct consisted of a multifaceted plot designed to cause injury to Snodgrass and ERI when they were most vulnerable as a result of their financial commitment for the buyout; and his wrongful conduct was committed in bad faith, intentionally, knowingly, willfully, and with malice to cause injury to ERI and Snodgrass and to unfairly and unjustly gain benefits for himself at their expense.

The court further found that ERI was a service company and the key to ERI's value was the ability to retain Swinnea's full and complete participation in ERI; Swinnea's scheme jeopardized ERI and Snodgrass's major sources of revenue, expertise, longstanding client relationships, and goodwill; his breaches were directed at the core elements of ERI, which gave the buyout transaction value; Swinnea wrongfully induced Snodgrass and ERI to pay full value in cash and property up front for the buyout; and his objective was the financial destruction of ERI and Snodgrass. The court also found that Swinnea's culpability was significant and his wrongful conduct was highly offensive to a public sense of justice and propriety. Accordingly, the trial court found it necessary to award actual damages and punitive damages in addition to ordering disgorgement of certain sums.

The nature of the wrong was the premeditated, intentional violation of Swinnea's fiduciary duty owed to his longtime business partner. The character of the conduct involved dishonesty and deceit. His wrongful conduct was committed over a long period of time, in bad faith, with malice, aimed at destroying ERI and Snodgrass. The parties were fiduciaries who had been in business together for about a decade. Swinnea possessed proprietary information regarding ERI and had a longstanding confidential relationship with Snodgrass. Swinnea's culpability was significant and his conduct was highly offensive to a public sense of justice and propriety. While a considerable amount of the harm done was economic, here, there was also a considerable amount of damage done to the relationship of trust between Swinnea and ERI and Snodgrass. Considering the circumstances, after applying the *Kraus* factors, we conclude that the exemplary damage award of one million dollars is reasonably proportioned to the actual and disgorgement awards of $899,301.05. *See id.*

We now consider whether the exemplary damage award offends due process. The first guidepost is the degree of reprehensibility of Swinnea's conduct. The analysis of the reprehensibility element of the punitive damages test focuses on the enormity of the misconduct. *Bennett v. Reynolds*, 315 S.W.3d 867, 874 (Tex. 2010). Again, Swinnea committed a premeditated, intentional violation of his fiduciary duty with the aim of destroying ERI and Snodgrass. It involved a continuing course of conduct, during which Swinnea was deceitful and acted with malice. His conduct was designed to cause injury when the targets of his actions were financially vulnerable as a result of their financial commitment for the buyout.

The second guidepost is the ratio between the exemplary damages award and the compensatory award. *Id.* at 877. Although the Supreme Court has declined to adopt a bright-line ratio, it has said that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. *Campbell*, 538 U.S. at 425, 123 S.Ct. at 1524. Swinnea contends that, considering the actual damage award to be $178,601.05

and the exemplary award to be $1,720,700.00, the ratio is near ten to one. As explained above, we reject his classification of the disgorgement award. Combined, the compensatory awards total $899,301.05. When compared to the one million dollar exemplary damage award, the ratio is 1.11197475 to 1. This ratio is well within constitutional parameters.

Swinnea does not address the third guidepost, the difference between the punitive damage award and the civil and criminal penalties authorized or imposed in comparable cases. The crime of securing execution of a document by deception is a felony of the first degree if the value of the property, service, or pecuniary interest is $300,000.00 or more and a second degree felony if the value is between $150,000.00 and $300,000.00. Tex. Penal Code Ann. § 32.46(b)(6) & (7) (West Supp.2015). An individual adjudged guilty of a first degree felony shall be imprisoned for life or for any term of not more than ninety-nine years or less than five years, and may be assessed a fine not to exceed $10,000.00. Tex. Penal Code Ann. § 12.32 (West 2011). Punishment for a second degree felony is imprisonment for between two and twenty years and a fine of up to $10,000.00. Tex. Penal Code Ann. § 12.33 (West 2011). Whether the value is considered the actual damages or the disgorged amount, the offense carries a prison term. The loss of one's liberty and a criminal conviction are greater consequences than any monetary penalty. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991).

Considering Swinnea's misconduct, the ratio of compensatory damages to exemplary damages, and the fact that a criminal conviction could result in the loss of Swinnea's liberty, we conclude that the one million dollar exemplary award does not violate federal due process protections.

*See Chapa*, 212 S.W.3d at 308. We overrule Swinnea's fourth issue to the extent he argues that the exemplary damage award is excessive.

### ATTORNEY'S FEES

In his fifth issue, Swinnea contends that ERI and Snodgrass are not entitled to attorney's fees. He argues that they can recover only under their fiduciary duty claim, a cause of action that does not entitle one to recover attorney's fees.

Swinnea does not direct our attention to the place in the record where he has preserved this complaint, and our review of the record revealed no objection. In order to preserve a complaint on appeal, one must preserve the error by bringing it to the trial court's attention, or it is waived. Tex. R. App. P. 33.1(a).

Additionally, the issue fails on the merits. In their suit against Swinnea, ERI and Snodgrass alleged common law fraud, fraud in a stock transaction, breach of contract, and breach of fiduciary duty. It has been determined that ERI and Snodgrass are entitled to lost profit damages, which can be recovered for common law and statutory fraud, breach of contract, and breach of fiduciary duty. *See ERI Consulting Eng'rs, Inc.*, 318 S.W.3d at 876 n. 3, 878. Attorney's fees are recoverable for statutory fraud and breach of contract. Tex. Bus. & Com. Code Ann. § 27.01(e) (West 2009); Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2015). Therefore, ERI and Snodgrass are entitled to an award of attorney's fees. We overrule Swinnea's fifth issue.

### CONCLUSION

The law of the case doctrine prevents us from reconsidering Snodgrass's standing and the applicability of the statutory cap on exemplary damages. The trial court's

disgorgement award should not be eliminated or revised. The exemplary damage award is not excessive and does not violate federal due process protections. Based on the record, ERI and Snodgrass are entitled to an award of attorney's fees. Due to our disposition of these issues, we need not address Swinnea's third and sixth issues. *See* TEX. R. APP. P. 47.1.