**Affirmed, in part, Reversed and Remanded, in part, and Opinion Filed August 24, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00340-CV

### T. CHRISTIAN COOPER, Appellant
### V.
### SANDERS H. CAMPBELL/RICHARD T. MULLEN, INC.
### D/B/A THE MULLEN COMPANY, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-15127**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and O'Neill[1]
Opinion by Justice Lang

T. Christian Cooper appeals the trial court's final judgment that awards Sanders H. Campbell/Richard T. Mullen, Inc. d/b/a The Mullen Company (Mullen Co.) $890,823.29 on its promissory note claim. The Mullen Co. was initially awarded $1,431,000 on the promissory note claim, but that sum was reduced by the trial court's award to Cooper of $519,300 on his equitable forfeiture claim and $20,000 in damages awarded by the jury on his breach of contract counterclaim. The parties' claims and counterclaims in this case relate to the Mullen/Cooper Joint Venture in which Cooper and the Mullen Co. were partners.

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

Cooper raises three issues on appeal. First, he argues the trial court erred when it denied his motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial on the claim for enforcement of a promissory note brought by the Mullen Co. because the Mullen Co. was not the holder or owner of the promissory note. Second, Cooper asserts the trial court erred when it denied his motions for directed verdict and judgment notwithstanding the verdict because, as a matter of law, the promissory note is "non-recourse," which precludes the imposition of personal liability on Cooper. Third, he argues the trial court erred when it denied his motion to modify the final judgment or for new trial because the trial court's limited order of equitable forfeiture does not "fit the circumstances or adequately protect" him from the breach of fiduciary duty by the Mullen Co.

The Mullen Co. filed a cross appeal. In cross-issues one and two, the Mullen Co. argues the trial court erred when it: (1) denied its motion to modify the judgment or for new trial because the record does not show the trial court determined its conduct was "a clear and serious breach of duty," supporting the imposition of equitable forfeiture; and (2) denied its motion to modify the judgment or for new trial because the amount of forfeiture should have been limited to the amount of compensation or profits realized by the Mullen Co. Also, in cross-issue three, the Mullen Co. argues the trial court erred when it granted Cooper's motion for directed verdict on its claim for an accounting.

We conclude the trial court did not err when it denied Cooper's motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial as to the promissory note claim of the Mullen Co. However, we conclude the trial court erred as to two of its rulings. First, it erred when it denied the motion to modify the final judgment or for new trial filed by the Mullen Co. on the issue of equitable forfeiture. Second, the trial court erred when it granted, in part, Cooper's motion for directed verdict on the Mullen Co.'s claim

seeking an accounting. The trial court's final judgment is affirmed, in part, and reversed and remanded, in part.

## I. FACTUAL AND PROCEDURAL CONTEXT

In 2001, Cooper was employed by the Mullen Co. That same year, he assisted the Mullen Co. in entering into a management agreement with Newnan Crossing Partnership. As a result, in 2001, the Mullen Co. executed a management agreement with Newnan Crossing Partnership. Pursuant to that management agreement, the Mullen Co. was responsible for managing, developing, and marketing ten real estate properties, the largest of which was located in Georgia. Newnan Crossing was a partnership of several families in Monterrey, Mexico, and those families were represented by Roberto Segovia Kane (Segovia). Also, Newnan Crossing invested through a company named Agave Investments. Then, in 2004, Cooper and the Mullen Co. became partners, executing the Mullen/Cooper Joint Venture, which, in part, gave Cooper a 30% ownership interest in the Newnan Crossing investment.

In 2006, Cooper learned the The PNL Companies were "interested in purchasing" some of the Newnan Crossing property. However, they were "actually [] talking about forming a venture and supplying a loan into the property." Cooper approached Mullen about participating with him in that deal, but Mullen "[did not] want to go into the business of competing against Newnan Crossing." However, Cooper decided "to be a partner in that deal" in his individual capacity. In order to fund his partnership interest, Cooper, in his individual capacity, worked with Segovia to obtain a loan for $600,000 from Newnan Crossing. The loan was made upon Cooper's execution of a business loan agreement, a promissory note, and a pledge and security agreement. In the promissory note, Cooper agreed to "apply all distributions received from the [p]artnership [i]nterest [] to the [n]ote." Cooper received distributions in the amounts of $1,388,959.57, $14,389, and $30,000. However, he did not apply any of these partnership

distributions toward repayment of the promissory note as agreed or repay the promissory note. According to Cooper, in 2008, he called Segovia to explain that he could not repay the promissory note and Segovia "forgave the loan," stating "don't worry about it." However, the December 31, 2008 and May 1, 2009 balance sheets for Newnan Crossing show an account receivable of $600,000 due from Cooper.

In September 2010, Segovia died unexpectedly and the new leadership of Newnan Crossing refused to pay approximately $1.8 million in management fees that the Mullen Co. and Cooper believed were owed pursuant to the 2001 management agreement. On January 24, 2011, John McFarland, an attorney for Newnan Crossing, spoke on the telephone with Cooper about the $600,000 loan. Contrary to Cooper's assertion that Segovia "forgave" or discharged the loan, according to McFarland, Cooper told him that "[h]e [] got [] Segovia to agree that Cooper would pay the $600,000 back at a later time, or it would be an offset by future fees payable to Cooper from the Mullen/Cooper management agreement with [Newnan Crossing]." However, during their conversation, Cooper claimed there was no documentation for the loan.

As a result of Newnan Crossing's refusal to pay, the Mullen Co., as party to the management agreement, sued Newnan Crossing to recover the unpaid management fees. Also, Newnan Crossing filed a completely separate suit against the Mullen Co., as party to the management agreement.

Eventually, in 2012, the Mullen Co., Newnan Crossing, and Agave settled their claims as to the management agreement. The Mullen Co. agreed to dismiss its claims against Newnan Crossing regarding the management agreement in exchange for $300,000 and an assignment of any causes of action and claims that Newnan Crossing or Agave may have against the Mullen/Cooper Joint Venture or Cooper. According to McFarland, the "Cooper debt clearly was a factor in determining the amount of the settlement that [Newnan Crossing] was willing to pay."

In December 2012, the Mullen Co. sued Cooper. In its first amended petition, the Mullen Co. alleged the following claims for damages against Cooper: (1) money had and received; (2) unjust enrichment; and (3) an accounting. Also, the Mullen Co., as assignee of the $600,000 promissory note, asserted a claim on the promissory note against Cooper, seeking an equitable lien on the collateral securing the promissory note, pre- and post-judgment interest, and attorneys' fees.

In Cooper's first amended answer, he generally denied the allegations and asserted that the claims brought by the Mullen Co., as partner in the Mullen/Cooper Joint Venture, were: (1) barred by the statute of limitations, the doctrine of unclean hands, and the doctrine of estoppel; (2) he was not the actual or proximate cause of the damages; and (3) the Mullen Co., as partner in the Mullen/Cooper Joint Venture, failed to mitigate its damages. Further, Cooper sought a setoff of any damages awarded on his counterclaims against the Mullen Co., as partner in the Mullen/Cooper Joint Venture. Also, Cooper contended that the claims brought by the Mullen Co., as assignee of the promissory note, had no merit because: (1) the assignment of claims was invalid; (2) the promissory note was not delivered; (3) it is not the holder or owner of the promissory note; (4) the promissory note is not a negotiable instrument; (5) the promissory note was discharged or forgiven; (6) the promissory note was non-recourse; and (7) the claim for attorneys' fees brought by the Mullen Co., as assignee of the promissory note, is beyond the scope of the section 38.001 of the Texas Civil Practices and Remedies Code.

In his original counterclaim, Cooper sought damages against the Mullen Co., as partner in the Mullen/Cooper Joint Venture, for breach of contract and breach of fiduciary duty,[2] and recovery of his attorneys' fees. As to his counterclaim for breach of fiduciary duty, Cooper

---

[2] The parties do not argue or address whether section 152.204 of the Texas Business Organizations Code allows for a breach of fiduciary duty claim in against a partner. *See* TEX. BUS. ORGS. CODE ANN. § 152.204 (West 2012). Accordingly, we express no opinion as to the effect of section 152.204 on claims for breach of fiduciary duty in a partnership.

claimed that the Mullen Co., as partner in the Mullen/Cooper Joint Venture, did not consult with him about the settlement made between the Mullen Co., as party to the management agreement, and Newnan Crossing, or obtain his approval to the terms of the settlement agreement as required by the Mullen/Cooper Joint Venture.

The case was tried to a jury. At the conclusion of the evidence, Cooper moved for a directed verdict as to: (1) the claims for money had and received, unjust enrichment, and an accounting; and (2) the claim to enforce the promissory note. After a hearing, the trial court denied Cooper's motion for a directed verdict as to the claims for money had and received, unjust enrichment, and the promissory note claim. However, the trial court granted Cooper's motion for directed verdict as to the accounting claim.

The jury found in favor of the Mullen Co. on its claims for: (1) money had and received, finding that Cooper received $300,000 that in equity and justice belonged to the Mullen Co.; and (2) unjust enrichment, awarding it no compensation. In addition, the jury found in favor of the Mullen Co. on its claim to enforce the promissory note, the damages of which were liquidated, and awarding it $15,000 in attorneys' fees for trial and no attorneys' fees in the event of an appeal. Also, the jury found against Cooper on his affirmative defense of discharge as to the claim to enforce the promissory note. Further, the jury found in favor of Cooper on his counterclaims against the Mullen Co. for: (1) breach of contract, awarding him $20,000 in damages; and (2) breach of fiduciary duty, awarding him no damages.

Cooper filed a motion for judgment notwithstanding the verdict, arguing the trial court should disregard some of the jury's findings and, because the jury found in favor of Cooper on his counterclaim for breach of fiduciary duty, but awarded Cooper no damages, the trial court should impose the equitable remedy of forfeiture. Also, the Mullen Co. filed a motion for

judgment. Cooper responded to the motion for judgment, arguing the trial court should render a take nothing judgment on the promissory note claim.

The final judgment signed by the trial court granted, in part, and denied, in part, the motion for judgment filed by the Mullen Co. and Cooper's motion for judgment notwithstanding the verdict. The final judgment also states that the trial court accepted the jury's verdict and found that each question submitted was supported by the evidence adduced at trial, except for the finding as to appellate attorneys' fees. Further, the final judgment awarded to the Mullen Co. a total recovery of $1,431,000 in damages, less $519,300, which is comprised of the amount awarded by the trial court to Cooper as equitable forfeiture claim based on breach of fiduciary duty by the Mullen Co., and $20,000 that was awarded by the jury to Cooper on his counterclaim for breach of contract. As a result, the net recovery, including interest, to the Mullen Co. was $890,823.29. In addition, the final judgment awarded the Mullen Co. attorneys' fees and set aside the jury's findings that it should recover no attorneys' fees in the event of an appeal. Both parties filed motions to modify the final judgment or for new trial, which were overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

## II. MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND MODIFY THE FINAL JUDGMENT OR FOR NEW TRAIL

Each issue and cross-issue on appeal challenges multiple rulings by the trial court. Although the issues and cross-issues vary as to the specific combination of rulings challenged in each, collectively they challenge the trial court's rulings on: (1) Cooper's motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial; and (2) the Mullen Co.'s motion to modify the final judgment or for new trial.

### A. Standards of Review

### 1. Motion for Directed Verdict

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.); *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 619 (Tex. App.—Dallas 2010, no pet.); *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). A directed verdict for a defendant may be proper in three situations: (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery. *See Prudential Ins. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000); *Blackstone*, 470 S.W.3d at 645; *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 398 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting directed verdict also proper when legal principle precludes recovery); *see also Cambio v. Briers*, No. 01-10-00807-CV, 2015 WL 2229274, at *3 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.) (noting directed verdict also proper when legal principle precludes recovery).

To the extent that a trial court's denial of a directed verdict is based on the evidence, the standard of review is a legal sufficiency or "no evidence" standard of review. *See Blackstone*, 470 S.W.3d at 645; *Mauricio v. Castro*, 287 S.W.3d 476, 478–79 (Tex. App.—Dallas 2009, no pet.). Similarly, when reviewing a trial court's order granting a directed verdict, an appellate court also follows the standard of review for assessing the legal sufficiency of the evidence. *See Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 498 (Tex. App.—Dallas 2014, no pet.). When reviewing a directed verdict, an appellate court considers all the evidence in a light most favorable to the nonmovant, and resolves all reasonable inferences that arise from the evidence

admitted at the trial in the nonmonvant's favor.  *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Blackstone*, 470 S.W.3d at 645; *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied).  If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury.  *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220–21 (Tex. 2011); *Blackstone*, 470 S.W.3d at 645.

To the extent that the trial court's ruling on a directed verdict is based on a question of law, an appellate court reviews that aspect of the ruling de novo.  *See JSC Neftegas-Impex*, 365 S.W.3d at 398; *see also Cambio*, 2015 WL 2229274, at *3.

### 2. Motion for Judgment Notwithstanding the Verdict

A trial court should grant a motion for judgment notwithstanding the verdict when: (1) the evidence is conclusive and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery.  *See Blackstone*, 470 S.W.3d at 645; *Iroh v. Igwe*, 461 S.W.3d 253, 261 (Tex. App.—Dallas 2015, pet. denied); *see also* TEX. R. CIV. P. 301.  A judgment notwithstanding the verdict is proper when a directed verdict would have been proper.  *See* TEX. R. CIV. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Blackstone*, 470 S.W.3d at 645; *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied).  Also, the standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for the denial of a motion for directed verdict.  *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review"); *Blackstone*, 470 S.W.3d at 645–46; *Iroh*, 461 S.W.3d at 261 n.3; *Cambio*, 2015 WL 2229274, at *3 (judgment notwithstanding the verdict also proper when legal principle precludes recovery, which is reviewed de novo); *JSC Neftegas-Impex*, 365 S.W.3d at 398.

### 3. Motion to Modify the Judgment or For New Trial

An appellate court reviews a trial court's denial of a motion to modify a final judgment under an abuse of discretion standard. *See Hodges v. Rajpal*, 459 S.W.3d 237, 250 (Tex. App.—Dallas 2015, no pet.). In addition, an appellate court reviews the denial of a motion for new trial for an abuse of discretion. *See Hodges*, 459 S.W.3d at 250. A trial court abuses its discretion when its actions are arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Hodges*, 459 S.W.3d at 250; *Dernick*, 471 S.W.3d at 482; *Miller*, 142 S.W.3d at 338. Legal and factual sufficiency are relevant factors to be considered in assessing whether the trial court abused its discretion. *See Dernick*, 471 S.W.3d at 482; *Miller*, 142 S.W.3d at 338. However, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence, as long as some evidence reasonably supports the trial court's decision. *See Dernick*, 471 S.W.3d at 482–83; *Miller*, 142 S.W.3d at 338.

### B. Enforcement of the Promissory Note

In issues one and two, Cooper challenges: (1) the legal and factual sufficiency of the evidence to support the jury's findings that the Mullen Co. established its claim to recover on the promissory note; and (2) the trial court's conclusion that, as a matter of law, Cooper was personally liable for that promissory note.

### 1. Owner or Holder of the Promissory Note

In issue one, Cooper argues the trial court erred when it denied his motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial on the promissory note claim because the evidence is legally and factually insufficient to support the jury's answer to question no. 7, finding that the Mullen Co. was the holder or owner of the promissory note. Cooper maintains that the Mullen Co. is not the holder of the promissory note

because evidence shows that it does not have possession of and never indorsed the promissory note. Also, Cooper contends that the Mullen Co. is not the owner of the promissory note because the evidence shows there was no transfer of the promissory note, the assignment was made to an entity that was not a party to the lawsuit, and the settlement agreement between Newnan Crossing and the Mullen Co., as party to the management agreement, did not reference or attach the promissory note. The Mullen Co. responds that it "has never claimed the rights of a holder." However, the Mullen Co. argues it is the owner of the promissory note because the jury found that "Cooper issue[d] the signed promissory note to Newnan Crossing" and the evidence shows that Newnan Crossing assigned the promissory note to the Mullen Co., as party to the management agreement.

### a. Applicable Law

To recover on a promissory note, the plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note. *See Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 237 (Tex. App.—Dallas 2011, pet. denied); *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App.—Dallas, no writ); *see also Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970) (plaintiff must establish he is present legal owner or holder of note sued upon).

One of the elements required to enforce a promissory note is that the plaintiff is the owner or holder of the note. The Texas Uniform Commercial Code defines "person entitled to enforce" an instrument as: (i) the holder of the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3.309 or 3.418(d). *See* TEX. BUS. & COM. CODE ANN. §§ 1.101, 3.301; *Manley*, 349 S.W.3d at 239. Also, a person may be a person

–11–

entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. *See* TEX. BUS. & COM. CODE ANN. § 3.301.

A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE ANN. § 1.201(b)(21); *see Manley*, 349 S.W.3d at 239. However, Texas law also recognizes that even if a person is not the "holder" of the note, he may prove that he is the "owner" and entitled to enforce the note. *See Manley*, 349 S.W.3d at 240. That is, the owner of a note may enforce the note even if he is not a holder. *See Manley*, 349 S.W.3d at 240. As a result, even if a person is not the holder of a note, he may still be able to foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. *See Myers v. HCB Real Holdings, L.L.C.*, No. 05-13-00113-CV, 2015 WL 2265152, at *2 (Tex. App.—Dallas 2015, pet. denied) (mem. op.); *Nelson v. Regions*, 170 S.W.3d 858, 864 (Tex. App.—Dallas 2005, no pet.). Likewise, under certain circumstances, common law principles of agency allow enforcement of a note by one not in possession. *See Nelson*, 170 S.W.3d at 864. Further, the law of negotiable instruments is supplemented not only by principles of law such as assignment and agency, but also by principles of equity. *See* TEX. BUS. & COM. CODE ANN. § 1.103(b) (unless specifically displaced, Uniform Commercial Code is supplemented by principles of law and equity such as assignment, agency, and mistake); *Manley*, 349 S.W.3d at 240; *Nelson*, 170 S.W.3d at 864. It would be inequitable to conclude that the owner of an unpaid note who did not have possession of the original note due to a mistake could not sue to enforce the note. *See Manley*, 349 S.W.3d at 240.

A party not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which it acquired the note. *See Myers*, 2015 WL 2265152, at *2; *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Under Texas law,

the transfer of a note may be proved by testimony or documentation. *See Leavings*, 175 S.W.3d at 312. An unexplained gap in the chain of title creates a genuine issue of material fact. *See Myers*, 2015 WL 2265152, at *2; *Leavings*, 175 S.W.3d at 309.

## b. Application of the Law to the Facts

In his first issue, Cooper challenges the legal and factual sufficiency of the evidence to prove that the Mullen Co. is the owner or holder of the promissory note. The jury answered "yes" to question no. 7 that asked if the Mullen Co. was the "owner or holder" of the promissory note. Because the Mullen Co. acknowledges it is not the holder of the promissory note, we limit our review to whether the evidence is legally and factually sufficient to support the jury's answer to question no. 7, in so far as it found that the Mullen Co. was the owner of the promissory note.

The jury made three findings in favor of the Mullen Co. on its promissory note claim. First, in question no. 6 of the jury charge, the jury found that Cooper issued the signed promissory note to Newnan Crossing. Second, in question no. 7, the jury found that the Mullen Co. was the holder or owner of the promissory note. Third, in question no. 8, the jury found against Cooper on his defense of discharge.

The promissory note, which was admitted into evidence, provides language contemplating the assignment of the promissory note and explains:

> 17. <u>Successor and Assigns.</u> This Note and all covenants, promises and agreements contained herein shall be jointly and severally binding upon and shall inure to the benefit of [Cooper] and [Newnan Crossing] [] and their respective *successors and assigns*.

[Italics added].

In addition, the pledge and security agreement, which was also admitted into evidence, includes language in paragraph 9, titled "Miscellaneous," that assignment of the promissory note is expressly permitted. It states, in part: "Without limiting the generality of the foregoing, the Secured Party may *assign or otherwise transfer* the Note to any other person, and such other

–13–

person shall thereupon become vested with all of the benefits in respect thereof granted to the Secured Party herein or otherwise." [Emphais added].

Also, the settlement agreement between Newnan Crossing, Agave, and the Mullen Co. was admitted into evidence. That settlement agreement specifically states that it is between "Newnan Crossing [], Agave [], and Sanders H. Campbell/Richard T. Mullen, Inc., d/b/a The Mullen Company." In a section titled "Assignment of Claims," Newnan Crossing and Agave transferred and assigned to "Richard T. Mullen and Company, Inc." all causes of action and claims they may have against Cooper.

During the trial, Cooper testified that he understood that the Mullen Co. agreed to dismiss its claims against Newnan Crossing "in exchange for a $300,000 cash payment and an assignment of claims against [him]." Also, McFarland testified that: (1) "the terms of the settlement were that the parties would dismiss the lawsuits and release their claims in exchange for a $300,000 cash payment to the Mullen Co[.] and an assignment of any claims or causes of action that Newnan [Crossing] or its managing partner[,] Agave[,] had against Mr. Cooper."; (2) "the ultimate settlement reached [] involved an assignment of claims from Newnan to the Mullen Co[.]"; and (3) the assignment of claims Newnan Crossing made in connection with the settlement agreement states, "Newnan [Crossing] and Agave . . . hereby transfer and assign to Richard T[.] Mullen and Company Inc[.], to the fullest extent permitted by law any and all causes of action[] and claims that either or both of them may have against . . . Cooper." In addition, Mullen testified that he obtained "an assignment of the claims that Newnan Crossing [] had against . . . Cooper." However, Mullen also testified that "Richard T. Mullen Company, Inc." is an affiliated company of the Mullen Co.

Based on the record, we conclude that there was legally and factually sufficient evidence to support the jury's finding that the Mullen Co. was the owner of the note. *See Myers*, 2015 WL

–14–

2265152, at *2 (Even if a person is not the holder of note, he may still be able to foreclose on the collateral and obtain a deficiency judgment under the common-law principle of assignment.). Accordingly, we conclude the trial court did not err when it denied Cooper's motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial as to the jury's finding that the Mullen Co. was the owner of the promissory note.

Issue one is decided against Cooper.

## 2. Personal Liability

In issue two, Cooper argues the trial court erred because, as a matter of law, Cooper was not personally liable on the promissory note claim. He claims that he cannot be held personally liable because the promissory note is a non-recourse note and the only remedy available under the promissory note was the security interest in the collateral and that "pledged collateral was gone." The Mullen Co. responds that while the promissory note limits Cooper's personal liability, it did not eliminate it. Also, the Mullen Co. claims it did not seek to impose any personal liability on Cooper beyond the partnership distributions and proceeds from the sale of the partnership interest in accordance with the limitation on liability in the promissory note.

### a. Applicable Law

Courts employ the same rules for interpreting a promissory note that they use to interpret a contract. *See Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no pet.). It is a basic premise of contract interpretation that unambiguous contracts are construed as a matter of law. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 560 (Tex. App.—Dallas 2009, no pet.). The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. *Worldwide Asset*, 290 S.W.3d

at 560; *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 924 (Tex. App.—Dallas 2005, no pet.). Terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Worldwide Asset*, 290 S.W.3d at 560; *First Union*, 168 S.W.3d at 924.

When interpreting a contract, courts examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *See Plains Expl.*, 473 S.W.3d at 305; *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Worldwide Asset*, 290 S.W.3d at 560; *First Union*, 168 S.W.3d at 924. No single provision taken alone is given controlling effect. *See Plains Expl.*, 473 S.W.3d at 305. Rather, each provision must be considered in the context of the instrument as a whole. *See Plains Expl.*, 473 S.W.3d at 305. Courts presume the parties to a contract intend every clause to have some effect. *See Heritage Res.*, 939 S.W.2d at 121; *Worldwide Asset*, 290 S.W.3d at 560; *First Union*, 168 S.W.3d at 924. When interpreting a promise or agreement, specific and exact terms are given greater weight than general language. *See Worldwide Asset*, 290 S.W.3d at 560; *First Union*, 168 S.W.3d at 924. However, although courts may consider the title of a contract provision or section to interpret a contract, the greater weight must be given to the operative contractual clauses of the agreement. *See RSUI Indem. Co. v. The Lloyd Co.*, 466 S.W.3d 113, 121 (Tex. 2015).

Section 9.102(a)(66) of the Texas Uniform Commercial Code defines a "promissory note" as "an instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgement by a bank that the bank has received for deposit a sum of money or funds." TEX. BUS. & COM. CODE ANN. § 9.102(a)(66) (West Supp. 2015). "Collateral" means, in part, "the property subject to a security interest" and

includes proceeds to which a security interest attaches. TEX. BUS. & COM. CODE ANN. § 9.102(a)(12). Generally, a non-recourse note has the effect of making the note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note. *See Patton v. Porterfield*, 411 S.W.3d 147, 157 (Tex. App.—Dallas 2013, no pet.); *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under a non-recourse note, the maker does not personally guarantee repayment of the note and thus, will have no personal liability. *See Patton*, 411 S.W.3d at 157; *Fein*, 68 S.W.3d at 266. If a maker of a non-recourse note elects not to repay the note, he is not exposed to personal liability, but, instead, takes the risk that the collateral securing the note will be lost if the holder of the note decides to enforce its security interest in the collateral. *See Patton*, 411 S.W.3d at 157; *Fein*, 68 S.W.3d at 266.

### b. Application of the Law to the Facts

In its first original petition, the Mullen Co. claimed it was "entitled to recover from [] Cooper the value of the collateral securing the note up to $600,000, plus interest and reasonable attorney's fees pursuant to the terms of the note." The final judgment awarded the Mullen Co. damages on its promissory note claim as follows:

> ORDERED, ADJUDGED, AND DECREED that [the Mullen Co.] is entitled to recover from [Cooper] $600,000, together with $30,000 in prejudgment interested (calculated at the rate of 5% per annum from July 14, 2006 through July 13, 2007), and together with $801,000 in prejudgment interest (calculated at the rate of 18% per annum from July 14, 2007 through the date of this judgment), for a total recovery in the amount of $1,431,000, which amount is to be adjusted as set forth below.

During the trial, Cooper testified that he received distributions in the amounts of $1,388,959.57, $14,389, and $30,000. Cooper stated that he had promised to use those distributions to repay the promissory note, he did not fulfill that promise, and he spent the money from the distributions elsewhere.

–17–

The parties identify paragraph 18 of the promissory note as the provision that is relevant to interpret whether the promissory note is non-recourse. However, we conclude that paragraph 3 is also instructive. We interpret these paragraphs together in conjunction with the entire promissory note. *See Plains Expl.*, 473 S.W.3d at 305.

First, paragraph 3 of the promissory note does not specify the amounts or dates on which Cooper is obligated to pay. Instead, it includes an affirmative duty for Cooper to "apply" or transfer all partnership distributions to repay the promissory note. Specifically, it states:

> 3. Payments Required. During the period beginning on the date of this Note and ending on the Maturity Date (as hereinafter defined), [Cooper] shall apply all distributions received from the Partnership Interest ("Partnership Distributions") to the Note with payments to be applied first to any accrued and unpaid. interest, and the balance, if any, applied to reduce the outstanding principal balance of the Note; provided, [Cooper] may reduce the amount of Partnership Distributions applied to the Note by any federal income taxes incurred by [Cooper] with respect to the Partnership Interest. All remaining accrued but unpaid interest, together with all unpaid principal and any additional charges applicable as provided in this Note, shall be due and payable on the Maturity Date (as hereinafter defined).

Second, paragraph 18 identifies Cooper's liability and states:

> 18. Limitation on Liability of [Cooper]. Nothing in the Note or the Loan Documents to the contrary withstanding, Payee shall look solely to the Partnership Distributions (reduced by tax obligations of [Cooper], as provided above) and the Partnership Interest for payment on this Note. No deficiency judgment for amounts unsatisfied after application of such distributions and proceeds from sale of the Partnership Interest shall ever be instituted, sought, taken or obtained against any party for any amounts which become due and owing.

Although paragraph 18 is titled "Limitation on Liability of [Cooper]," we must give greater weight to the operative contractual clauses of the promissory note. *See RSUI Indem.*, 466 S.W.3d at 121. In order to properly analyze the meaning of paragraph 18, we must address its two material parts. Those are: (1) "Nothing in the Note or the Loan Documents to the contrary withstanding, Payee shall look solely to the Partnership Distributions (reduced by tax obligations of [Cooper], as provided above) and the Partnership Interest for payment on this Note"; and (2)

"No deficiency judgment for amounts unsatisfied after application of such distributions and proceeds from sale of the Partnership Interest shall ever be instituted, sought, taken or obtained against any party for any amounts which become due and owing."

Further, although it uses the language "shall look solely to," the first part of paragraph 18 also states that it relates to "payment on the [n]ote." *See Patton*, 411 S.W.3d at 157 (generally, non-recourse note has effect of making note payable out of particular fund or source, namely, proceeds of sale of collateral securing note); *Fein*, 68 S.W.3d at 266. As a result, it restates Cooper's affirmative duty, as stated in paragraph 3, to repay the promissory note from the partnership distributions. *See Patton*, 411 S.W.3d at 157 (if maker of non-recourse note elects not to repay note, he is not exposed to personal liability, but takes risk collateral securing note will be lost if holder decides to enforce security interest); *Fein*, 68 S.W.3d at 266. However, importantly, the language of the note does not address default or a deficiency judgment. Nor does it specify that the secured party has no recourse against Cooper or that Cooper will not be held personally liable in the event of a default or deficiency.

The second part of paragraph 18 establishes that the secured party may not seek a deficiency judgment for "amounts unsatisfied after application of such distributions and proceeds from the sale of the Partnership Interest." We construe this language to identify the extent of any recourse against Cooper. However, by its plain language, this provision that Cooper claims demonstrates the promissory note is non-recourse, only makes clear the non-recourse provision is contingent on or does not take effect until "after the application of such distributions." *See Worldwide Asset*, 290 S.W.3d at 560 (courts examine entire agreement and terms are given plain, ordinary, and generally accepted meaning, unless instrument shows they are used in technical or different sense).

The record shows Cooper testified at trial that he did not fulfill his promise to use the partnership distributions he received to repay the promissory note and he spent the money from the distributions elsewhere. As a result, by its own terms, the second part of paragraph 18, which says "No deficiency judgment for amounts unsatisfied after application of such distributions and proceeds from sale of the Partnership Interest shall ever be instituted, sought, taken or obtained against any party for any amounts which become due and owing," did not become effective because no partnership distribution was applied to pay the promissory note. Accordingly, we conclude the trial court did not err when it denied Cooper's motions for directed verdict and judgment notwithstanding the verdict as to the Mullen Co.'s promissory note claim.

Issue two is decided against Cooper.

### C. Equitable Forfeiture

In issue three and cross-issues one and two, the parties argue the trial court erred when it denied their respective motions to modify the final judgment or for new trial as to the issue of equitable forfeiture. In issue one, Cooper complains the final judgment improperly included only a limited order of equitable forfeiture in the final judgment. He claims this relief "does not fit the circumstances or adequately protect" him from the Mullen Co.'s breach of fiduciary duty and the Mullen Co. should not be allowed any recovery on the assigned promissory note that was obtained through the self-dealing of the Mullen Co. In cross-issue one, the Mullen Co. argues the trial court abused its discretion in making an equitable forfeiture award to Cooper. This is because the record does not show the trial court made the required determination that the conduct of the Mullen Co. was a "clear and serious" breach of fiduciary duty, which the trial court can conclude only after applying the factors identified by the Texas Supreme Court. *See ERI Consulting Eng'r, Inc. v. Swinnea*, 318 S.W.3d 867, 874, 875 (Tex. 2010). In cross-issue two, the Mullen Co. argues the trial court abused its discretion when it determined the amount of

forfeiture, which should have been limited to the amount of compensation or profits realized by the Mullen Co.

## 1. Standard of Review—Forfeiture

An appellate court reviews a trial court's forfeiture determination for an abuse of discretion. *See Burrow v. Arce*, 997 S.W.2d 229, 243 (Tex. 1999) (quoting Restatement (Second) of Trusts § 243 cmt. c (9159)); *see also Dernick Resources, Inc. v. Wilstein*, 471 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2015, pet. filed); *Miller v. Kennedy & Monshew, Prof'l Corp.*, 142 S.W.3d 325, 338 (Tex. App.—Fort Worth 2003, pet. denied); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 23 (Tex. App.—Tyler 2000, pet. denied).

## 2. Applicable Law

Courts may fashion equitable remedies such as disgorgement and forfeiture to remedy a breach of a fiduciary duty. *See ERI Consulting*, 318 S.W.3d at 873–875; *Burrow*, 997 S.W.3d at 873; *see also Dernick*, 471 S.W.3d at 482. Disgorgement is an equitable forfeiture of benefits wrongfully obtained. *See In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (orig. proceeding); *Swinnea v. ERI Consulting Eng'r, Inc.*, 481 S.W.3d 747, 752 (Tex. App.—Tyler 2016, no pet.). A party must plead forfeiture to be entitled to that equitable remedy. *See Alavi v. MCI Worldcom Network Servs., Inc.*, No. 09-05-00364-CV, 2007 WL 274565, at *3 (Tex. App.—Beaumont Feb. 1, 2007, pet. denied) (mem. op.); *Lee v. Lee*, 47 S.W.3d 767, 780 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Whether a forfeiture should be imposed must be determined by the trial court based on the equity of the circumstances. *See Burrow*, 997 S.W.2d at 245; *Swinnea*, 481 S.W.3d at 753; *Dernick*, 471 S.W.3d at 482. However, certain matters may present fact issues for the jury to decide, such as whether or when the alleged misconduct occurred, the fiduciary's mental state and culpability, the value of the fiduciary's services, and the existence and amount of harm to the

principal. *See Dernick*, 471 S.W.3d at 482; *Miller*, 142 S.W.3d at 338. Once the factual disputes have been resolved, the trial court must determine: (1) whether the fiduciary's conduct was a "clear and serious" breach of duty to the principal; (2) whether any monetary sum should be forfeited; and (3) if so, what the amount should be. *See Swinnea*, 481 S.W.3d at 753 (citing *Burrow*, 997 S.W.2d at 245–46); *Dernick*, 471 S.W.3d at 482.

As stated above, the trial court's first step is to determine whether there was a "clear and serious" breach of duty. *See Swinnea*, 481 S.W.3d at 753; *Dernick*, 471 S.W.3d at 482. The trial court should consider factors such as: (1) the gravity and timing of the breach; (2) the level of intent or fault; (3) whether the principal received any benefit from the fiduciary despite the breach; (4) the centrality of the breach to the scope of the fiduciary relationship; (5) any other threatened or actual harm to the principal; (6) the adequacy of other remedies; and (7) whether forfeiture fits the circumstances and will work to serve the ultimate goal of protecting relationships of trust. *See ERI Consulting*, 318 S.W.3d at 875; *Swinnea*, 481 S.W.3d at 753; *Dernick*, 471 S.W.3d at 482. However, forfeiture is not justified in every instance in which a fiduciary violates a legal duty because some violations are inadvertent or do not significantly harm the principal. *See Burrow*, 997 S.W.2d at 241; *Dernick*, 471 S.W.3d at 482; *Miller*, 142 S.W.3d at 338.

Second, the trial court must determine whether any monetary sum should be forfeited. The central purpose of forfeiture as an equitable remedy is not to compensate the injured principal, but to protect relationships of trust by discouraging disloyalty. *See In re Longview*, 464 S.W.3d at 361 (Tex. 2015) (orig. proceeding); *ERI Consulting*, 318 S.W.3d at 872–73; *Burrow*, 997 S.W.2d at 238; *see also Dernick*, 471 S.W.3d at 482. Disgorgement is compensatory in the same sense as attorney fees, interest, and costs, but it is not damages. *See In re Longview*, 464 S.W.3d at 361. As a result, equitable forfeiture is distinguishable from an

–22–

award of actual damages incurred as a result of a breach of fiduciary duty. *See Burrow*, 997 S.W.2d at 240; *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 905 (Tex. App.—Dallas 2014, pet. denied); *Swinnea*, 481 S.W.3d at 753. In fact, a claimant need not prove actual damages to succeed on a claim for forfeiture because they address different wrongs. *See Burrow*, 997 S.W.2d at 240; *Swinnea*, 481 S.W.3d at 753. In addition to serving as a deterrent, forfeiture can serve as restitution to a principal who did not receive the benefit of the bargain due to his agent's breach of fiduciary duty. *See Swinnea*, 481 S.W.3d at 753 (citing *Burrow*, 997 S.W.2d at 237–38).

Third, if the trial court determines there should be a forfeiture, it must determine what the amount should be. The amount of disgorgement is based on the circumstances and is within the trial court's discretion. *See McCullough*, 435 S.W.3d at 905; *Swinnea*, 481 S.W.3d at 753. For example, it would be inequitable for an agent who performed extensive services faithfully to be denied all compensation if the misconduct was slight or inadvertent. *See McCullough*, 435 S.W.3d at 905 (quoting *Burrow*, 997 S.W.2d at 241).

### 3. Application of the Law to the Facts

The record shows that Cooper filed a counterclaim against the Mullen Co. for breach of fiduciary duty, seeking actual and punitive damages, which he sought to be determined by the jury. However, Cooper's counterclaim pleading did not raise in any way the equitable remedy of forfeiture. *See Alavi*, 2007 WL 274565, at \*3 (party must plead forfeiture to be entitled to remedy); *Lee*, 47 S.W.3d at 780. The jury found that the Mullen Co. breached its fiduciary duty to Cooper, but awarded Cooper no damages. The trial court's charge did not ask the jury to determine the Mullen Co.'s mental state or culpability, the value of its services, or the existence and amount of harm to Cooper. *See Dernick*, 471 S.W.3d at 482 (noting matters that may present fact issues for jury on equitable forfeiture claim); *Miller*, 142 S.W.3d at 338.

–23–

The record before us shows that Cooper first asserted his counterclaim for the equitable remedy of forfeiture in his motion for judgment notwithstanding the verdict, arguing:

> In addition, the [trial court] should order that, based on the jury's finding that [the Mullen Co.] breached its fiduciary duty to [Cooper] in entering into the settlement agreement by which [the Mullen Co.] allegedly obtained an assignment of its claim to enforce the promissory note at issue, [the Mullen Co.] forfeit the ill-gotten gains it obtained in the settlement.

In a footnote to his motion for judgment notwithstanding the verdict, Cooper added "Accordingly, the [trial court] should, as an equitable remedy for [the Mullen Co.'s] breach of fiduciary duty, order that [the Mullen Co.] forfeit its assigned claim to enforce the promissory note—along with any money it might be able to recover in connection therewith."

The quoted statements comprise the entirety of Cooper's argument in his motion. Although Cooper did cite in that motion the seminal Texas Supreme Court case respecting equitable forfeiture, *ERI Consulting*, he failed to address the factors that the Texas Supreme Court identified which are to be considered by a trial court when determining whether there was a "clear and serious" breach of duty. *See ERI Consulting*, 318 S.W.3d at 874–75; *Swinnea*, 481 S.W.3d at 753; *Dernick*, 471 S.W.3d at 482. Whether there was a "clear and serious" breach of duty is the predicate to the determination of whether there should be an equitable forfeiture in any amount. Further, Cooper did not argue in his motion the amount or propose a calculation for determining the amount that he believed the Mullen Co. should be required to forfeit. *See Swinnea*, 481 S.W.3d at 753 (trial court must determine whether monetary sum should be forfeited and if so, what amount).[3]

The Mullen Co. filed a motion for judgment based on the jury's verdict. In his response, Cooper incorporated the equitable forfeiture argument previously made in his motion for

---

[3] The case summary, which is included in the clerk's record, indicates that there was a hearing on Cooper's motion for judgment notwithstanding the verdict, but no reporter's record of that hearing has been filed on appeal.

judgment notwithstanding the verdict, arguing only that "[the Mullen Co.] obtained the note (if it did) by breaching its fiduciary duty to [Cooper] and, therefore, should forfeit the note and any proceeds therefrom." Again, as with his motion for judgment notwithstanding the verdict, Cooper did not address the factors identified by the Texas Supreme Court for determining whether there was a "clear and serious" breach of duty by the Mullen Co. Nor did he argue the amount or propose a calculation for determining the amount that he believed the Mullen Co. should be required to forfeit.

When the trial court rendered its judgment, it ordered as follows regarding equitable forfeiture:

> ORDERED, ADJUDGED, AND DECREED that, based on the Court's exercise of its powers in Equity, [the Mullen Co.] shall forfeit the amount of $519,300 (Being the sum of 30% of the amount which [the Mullen Co.] would otherwise be entitled to recover, and 30% of the $300,000 received by [the Mullen Co.] from Newnan Crossing []) from its recovery of the amount calculated in the previous paragraph, thereby reducing the amount to be awarded to [the Mullen Co.] from $1,431,000 to $911,700, which amount is to be adjusted further as set forth below.

Thereafter, Cooper filed a motion to modify the final judgment or, in the alternative, for new trial. In that motion, Cooper conceded that the trial court "granted [his] request[,] in part, ordering that [the Mullen Co.] only be required to forfeit 30% of the recovery on the Note, plus 30% of the $300,000 cash received by [the Mullen Co.] in settlement with [Newnan Crossing]." However, Cooper asked the judgment to be modified "to order that [the Mullen Co.] forfeit any and all recovery on its claim to enforce the Note." The Mullen Co. also filed a motion for new trial and to modify the judgment. The Mullen Co. argued the trial court should modify the judgment, in part, because "[A]ny breach [of fiduciary duty] [by the Mullen Co.] was not the type of clear and serious breach of fiduciary duty that is a prerequisite to forfeiture." The parties' motions to modify the judgment or for new trial were overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

Our concern regarding the imposition of equitable forfeiture of $519,300 by the trial court in this case is based on the holding of the Texas Supreme Court in *ERI Consulting*. *See ERI Consulting*, 318 S.W.3d at 875. In that case, the Texas Supreme Court wrote at length about the concept of equitable forfeiture and the requirement that, in order for equitable forfeiture to be imposed, a trial court must conclude a party committed a "clear and serious" breach of duty. *See ERI Consulting*, 318 S.W.3d at 875. Importantly, that court identified the "factors" and "principles" which must be addressed in making the determination of whether the breach of duty was a "clear and serious" one and in fashioning the award. Those "factors" and "principles" are: (1) the gravity and timing of the breach; (2) the level of intent or fault; (3) whether the principal received any benefit from the fiduciary despite the breach; (4) the centrality of the breach to the scope of the fiduciary relationship; (5) any other threatened or actual harm to the principal; (6) the adequacy of other remedies; and (7) whether forfeiture fits the circumstances and will work to serve the ultimate goal of protecting relationships of trust. *See ERI Consulting*, 318 S.W.3d at 875; *see also Swinnea*, 481 S.W.3d at 753; *Dernick*, 471 S.W.3d at 482.

Further, critical to the case before us, the Texas Supreme Court, in *ERI Consulting*, concluded there was no indication in the record the trial court followed the "factors" and "principles" enumerated above for determining whether there was a "clear and serious" breach of duty and in "fashioning its award" of equitable forfeiture. *ERI Consulting*, 318 S.W.3d at 875. That court determined that case must be remanded to the trial court "for consideration of these factors." *See id*.

Cooper did not identify or brief in the trial court the requirement that the trial court conclude there was a "clear and serious" breach of duty as a predicate to assessing a sum that should be awarded as an equitable forfeiture. Cooper does not cite to anything in the record, nor can we find anything in the record, to show that in the fashioning of the equitable forfeiture

award the trial court considered the "principles" or "factors" enumerated in *ERI Consulting*. Accordingly, we conclude the claim of forfeiture should be remanded to the trial court for consideration of the factors described by the Texas Supreme Court. *See ERI Consulting*, 398 S.W.3d at 875.

Cross-issue one is decided in favor of the Mullen Co. Based on our resolution of cross-issue one, we need not address issue three or cross-issue two.

### *C. Accounting*

In cross-issue three, the Mullen Co. argues the trial court erred when it granted Cooper's motion for directed verdict on its claim for an accounting. It claims that the Texas Uniform Partnership Act permits a partner to maintain an action for an accounting without suing for dissolution or the necessity of proving an inadequate remedy at law. Cooper responds that: (1) the Mullen Co. pleaded a claim for an equitable accounting and had the burden to prove that the facts and accounts were so complex that adequate relief may not be obtained at law; (2) the Mullen Co. sought an accounting as to the $600,000 loan made to Cooper in his individual capacity and it cannot seek an accounting on an asset that is not part of the partnership; and (3) the claim for an accounting was an improper attempt to circumvent the statute of limitations barring the common law claims for money had and received, and unjust enrichment brought by the Mullen Co.

### 1. Standard of Review—Accounting

A suit for an accounting is generally founded in equity. *See Palmetto Lumber Co. v. Gibbs*, 80 S.W.2d 742, 748 (Tex. 1935); *Sw. Livestock & Tucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied). The decision to grant an accounting is within the discretion of the trial court. *See Sw. Livestock*, 884 S.W.2d at 809–10.

## 2. Applicable Law

Section 152.211(b) of the Texas Business Organizations Code provides that, "A partner may maintain an action against the partnership or another partner for legal or equitable relief, including an accounting of partnership business," to enforce a right under the partnership agreement or other rights established in the statute. *See* TEX. BUS. ORGS. CODE ANN. § 152.211(b) (West 2012). However, a right to an accounting does not revive a claim barred by law. *See* TEX. BUS. ORGS. CODE ANN. § 152.211(b)(d).

## 3. Application of the Law to the Facts

In its first amended petition, the Mullen Co. brought a claim for an accounting against Cooper. The Mullen Co. alleged that Cooper has failed and refused to account for or to deliver $750,000 lent or advanced to him by Newnan Crossing against the fees earned by the Mullen Co., as party to the management agreements. The $750,000 was comprised of the $600,000 loan and $150,000 in earned fees relating to a different venture. As a result, the Mullen Co. sought an accounting to investigate and establish the parties' interest in the $750,000 and claimed there was no adequate remedy at law.

During the trial, Cooper sought a directed verdict on the claim for an accounting brought by the Mullen Co. on the sole basis that "the evidence that comes out shows the facts and accounts are not so complex that [the Mullen Co.] lacks an adequate remedy at law." However, section 19.01 of the Mullen/Cooper Joint Venture agreement, which is titled "Equitable Remedies," and was admitted into evidence shows the parties agreed as follows:

> It is mutually agreed that[,] in the event of a breach or threatened breach of this Agreement by any Venturer[,] **there is no adequate remedy at law** in favor of the other Venturer and any Venturer, in addition to all other rights which may be available, shall have the right of specific performance in the even of any breach or injunction in the event of any threatened breach, of this Agreement by the other Venturer(s).

(Emphasis added).  By the terms of the parties' agreement, there was no adequate remedy at law. Accordingly, we conclude the trial court erred when it granted Cooper's motion for directed verdict on the claim for an accounting as described above.

Cross-issue three is decided in favor of the Mullen Co.

### III.  CONCLUSION

The trial court did not err when it denied Cooper's motions for directed verdict, judgment notwithstanding the verdict, and to modify the final judgment or for new trial on the Mullen Co.'s promissory note claim.  This part of the trial court's final judgment is affirmed.

However, the trial court erred when it denied the motion to modify the final judgment or for new trial filed by Mullen Co. on the issue of equitable forfeiture.  The portion of the trial court's final judgment granting equitable forfeiture and reducing the Mullen Co.'s total recovery by \$519,300 is reversed and the claim is remanded to the trial court for further proceedings consistent with this opinion.

Finally, the trial court erred when it granted, in part, Cooper's motion for directed verdict on the Mullen Co.'s claim seeking an accounting.  Accordingly, that ruling of the trial court is reversed and that claim is remanded for further proceedings consistent with this opinion.

Accordingly, the trial court's final judgment is affirmed, in part, and reversed and remanded, in part.

150340F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

T. CHRISTIAN COOPER, Appellant

No. 05-15-00340-CV     V.

SANDERS H. CAMPBELL/RICHARD T. MULLEN, INC. D/B/A THE MULLEN COMPANY, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-15127.
Opinion delivered by Justice Lang. Justices Bridges and O'Neill participating.

In accordance with this Court's opinion of this date, the final judgment of the trial court is **AFFIRMED,** in part, and **REVERSED,** in part.

We **REVERSE** the portion of the trial court's final judgment granting appellant T. CHRISTIAN COOPER's counterclaim for equitable forfeiture and motion for directed verdict on appellee SANDERS H. CAMPBELL/RICHARD T. MULLEN, INC. D/B/A THE MULLEN COMPANY's claim for an accounting.

In all other respects, the trial court's final judgment is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this Court's opinion.

It is **ORDERED** that appellee SANDERS H. CAMPBELL/RICHARD T. MULLEN, INC. D/B/A THE MULLEN COMPANY recover its costs of this appeal and cross-appeal from

appellant T. CHRISTIAN COOPER and from the cash deposit in lieu of cost bond. After all costs have been paid, the Clerk of the District Court is directed to release the balance, if any, of the cash deposit to T. CHRISTIAN COOPER.

Judgment entered this 24th day of August, 2016.